In re Kevan L. CHAMNESS, Debtor.

No. 03–35099–HRT.

United States Bankruptcy Court, D. Colorado.

May 28, 2004.

Stuart J. Carr, Jan L. Hammerman, Centennial, CO, for Debtor.

Leigh Lichtenegger, Denver, Co, Leo M. Weiss, Denver, CO, for Trustee.

## ORDER REGARDING MOTION TO EXTEND DEADLINES

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER is before the Court on the United States Trustee's Motion to Extend Deadlines and the Debtor's Objection to that request. The Court has reviewed and considered the parties' arguments, offers of proof and submissions at hearing on May 25, 2004, including the Debtor's Pre–Hearing Memorandum, and is ready to rule.

There appears to be little or no disagreement between the parties regarding the underlying facts:

1. Debtor filed her petition for Chapter 7 relief under Title 11 on December 18, 2003.

2. The Section 341 First Meeting of Creditors was scheduled for and held on January 23, 2004.

3. Notice of that meeting established that the last date by which a party must file a motion to dismiss under 11 U.S.C. § 707(b) or a complaint objecting to the Debtor's discharge under 11 U.S.C. § 727 was March 23, 2004.

4. On a bankruptcy systemwide scale, the United States Trustee ("UST") program is conducting a pilot Debtor Audit Program in selected federal districts to evaluate the accuracy and completeness of the information in certain Debtors' petitions, statements and schedules.

5. This Debtor's case was selected under the audit criteria and on December 29, 2003, the UST sent a letter to Debtor's counsel requesting certain documents needed for the UST's review.

6. The Debtor timely complied with the extensive request for information on January 19, 2004, by delivering a seven (7) pound box of documents to the UST's contract auditing firm in California.

7. The UST received the auditor's report back sometime in early to mid-March, 2004. The documents submitted by the Debtor in response to the UST's request raised additional concerns regarding the accuracy and completeness of the information in the Debtor's petition, statement and schedules.

8. On March 12, 2004, the UST filed his Motion to extend the deadlines seeking an additional sixty days past the March 23, 2004 deadline to file a motion to dismiss under 11 U.S.C. § 707(b) or a complaint objecting to the Debtor's discharge under 11 U.S.C. § 727 in order to allow the UST to complete his investigation of the Debtor's case.

9. During March, telephone calls between the UST office and Debtor's counsel occurred regarding the UST's request for more information or clarification.

10. On March 30, 2004, the UST sent a follow-up letter to Debtor's counsel

requesting more information. The Debtor did not respond formally to that letter, apparently choosing instead to file an objection to the UST's request to extend deadlines.

## DISCUSSION

■ Rule 9006(b) controls a motion for enlargement of time. Rule 9006(b)(3) provides that the Court's discretion to allow an extension of time for certain actions is limited by provisions of other rules addressing those actions.

Rule 1017(e) controls a motion to dismiss for substantial abuse under § 707(b). The motion for extension must be filed within 60 days after the first date set for the § 341 meeting. An extension may only be granted for cause. The U.S. Trustee's motion must set forth all matters to be submitted to the court in the motion. No new matters may be offered at the hearing that do not appear in the motion.

The allegations appearing in U.S. Trustee's motion are that

a. Debtor may have understated income on Schedule I and in the Statement of Financial Affairs.

b. Debtor responded to UST's December 29, 2003, letter with material that raised additional questions that the UST needed to investigate.

c. An added 60 days (to May 22, 2004) is necessary to complete his investigation.

The motion to dismiss under § 707(b) was filed on May 14, 2004, within the time the motion for extension requested. Not having filed a Complaint objecting to discharge, the UST admitted at hearing its extension request under Bankruptcy Rule 4004 was moot. The Court agrees and there is no need to address that issue further.

The Debtor argues that extensions of this type must be exercised cautiously and that the UST has not demonstrated cause for the Court to grant an extension of the 707(b) deadline. The UST asserts that it acted diligently in pursuing its investigation. At hearing, the UST provided the Court and opposing counsel with a copy of a Bench Ruling dated April 7, 2004 by Chief Judge Paul Glenn of the Middle District of Florida, Tampa Division, in the Chapter 7 case of Harold Newburg, Case No. 03–25207–8G7, another debtor apparently subjected to the Debtor Audit process. The Court gave the Debtor additional time to address that case, but does not have any Response by Debtor's counsel to the ruling. The Court finds Judge Glenn's remarks persuasive.

■ Deadlines to extend objections to discharge and dischargeability—60 days—are very short relative to other statute of limitation deadlines. This is to give Debtors some degree of certainty in the process of obtaining a discharge. Therefore, Judge Glenn stated that he liberally extends deadlines to object if such motions to do so are filed before the 60–day deadline ends. It can probably be assumed that he would apply the same reasoning to 707(b) extension requests under Rule 1017(e). This Court would not go as far as endorsing a liberal policy in all cases, but would instead tend to view each case on its facts and circumstances.

In support of her position that the UST's requested extension to file a 707(b) motion should be denied, the Debtor cites *In re Nowinski,* a 2003 case from the S.D.N.Y. reported at 291 B.R. 302 (Bankr. S.D.N.Y.2003) discussing the factors a Court should consider in determining if cause exists to grant an extension to object to discharge under Rule 4004. Those factors are:

a) Whether the creditor had sufficient notice of the deadline and the information to file an objection;

b) The complexity of the case;

c) Whether the creditor exercised diligence;

d) Whether the debtor refused in bad faith to cooperate with the creditor; and

e) The possibility that proceedings pending in another forum will result in collateral estoppel. This is a factor which is not applicable here.

The Court first notes that *Nowinski*, and others cited, involve creditors' rights and obligations in objecting to a debtor's discharge or the dischargeability of a debt. Factually, most of these cases demonstrate that creditors cannot be dilatory and sit on their rights and then expect at the last moment to be granted an extension of time to investigate and/or contest a debtor's discharge. These cases are examples of where a creditor does nothing until a few days before the deadlines end or really has little or no valid reasons for the delay.

The case here is different for certain reasons. The UST is not a creditor. The UST is not an economically affected party. It has powers and duties that extend beyond the debtor/creditor relationship of individual bankruptcy cases. It has broad regulatory and administrative responsibilities that involve the entire system and implicate the agency's required or discretionary involvement in individual cases as necessary and appropriate.

As Judge Glenn stated, cause to grant an extension to file exists at 2 levels:

1. Cause exists to allow UST to conduct an audit based on the agency's statutory charge to monitor and supervise the administration of bankruptcy cases and trustees.

28 U.S.C. § 586(a)(3)(D) directs that the UST shall exercise this supervisory and administrative role by "whenever the UST considers it to be appropriate—

(D) taking such action as the UST deems to be appropriate to ensure that all reports, schedules and fees required to be filed under title 11 and under this title [title 28] by the debtor are properly and timely filed;

28 U.S.C. § 586(a)(5) further directs that the UST shall perform the duties prescribed for the United States Trustee under title 11 and title 28, and such duties consistent with title 11 and title 28 as the Attorney General may prescribe.

Consistent with those responsibilities, acquiring statistics to support legislation or to analyze perceived problems or concerns about the system, such as the accuracy of filed schedules, are appropriate if done reasonably.

The bankruptcy process is dependent upon accurate schedules and upon UST's ability to monitor, supervise and if necessary, enforce the Bankruptcy statute, the Rules and the spirit of those laws and regulations. The Court does not know if any impropriety on the Debtor's part in fact exists. It is yet not before the Court. But, the UST must have the ability to timely and effectively investigate matters related to its responsibilities.

2. Cause also exists under the facts and circumstances of this case even considering the authority cited by the Debtor. Unlike creditors, the UST does not usually have a pre-existing, pre-petition relationship with the debtors that file for bankruptcy protection. The UST's involvement in the case begins at filing; and therefore, where it may be reasonable to assume that creditors should be able to act within the first 30 to 90 days of a case to protect their rights if they so choose, it is not outside the realm of possibility that at times the

UST may need to request additional time to carry out his or her statutory responsibilities.

The Court finds that the UST acted diligently to investigate this case. Soon after filing, the Debtor's case was selected for audit. The UST sent its initial request for information on December 29, 2003, 11 days after the case was filed and approximately three weeks before the § 341 meeting. This put the Debtor on notice that an audit was to be done. Yes, the UST knew of the 341 date, but once commenced, a reasonable amount of time must be allowed for the investigative process to run its course.

To her credit, the Debtor timely complied on January 19, 2004 with a large volume of documents. The case may not be that complex, but even assuming the UST could review and digest all of the 7 pounds of information provided in the four days before the § 341 meeting, the fact that the UST did not attend the Debtor's § 341 of creditors is not unusual. With over 25,000 cases filed or pending in this District, the UST may not be in a position to attend every meeting or hearing regarding the cases on which outstanding information requests or investigations are pending. Especially where, as here, the Debtor's information and response, in the first instance, was sent to the UST's contract auditing firm in California for analysis.

Once that firm completed its report, the UST timely requested, on March 12, 2004, an extension of the deadlines to file a 707(b) motion or object to discharge. At that time, the investigation was on-going and the UST believed it needed more information.

The Debtor has provided a lot of information, based upon weight alone. The Court has scanned it, but cannot read it all in the time allowed. But, it is evident the information requested and voluntarily provided is the type of information relevant to any bankruptcy case inquiry. Given the high volume of filings, most cases do not get anywhere near this type of in-depth review. The system relies on the Debtor's good faith effort, albeit under penalty of perjury, to be accurate in filing her bankruptcy papers and also relies on the good judgment and experience of UST, case trustees and affected creditors to timely point out the more glaring problems. That is what the UST's audits and study are for: to see if there is a problem with inaccurate schedules on a global or system-wide scale which must be addressed—either legislatively or by increased enforcement of existing requirements.

The Debtor did her best to voluntarily comply and she is to be commended. She did not refuse to comply in bad faith, having produced a substantial amount of documentation in response to the UST's initial request. The Court notes that the Debtor apparently did not comply with the UST's supplemental request for clarifying information, but no one has alleged that was in bad faith. The production is a pain in the neck I am sure, but it is one that could have also been compelled by formal process if necessary.

The fact that the Debtor disclosed certain information on her bankruptcy schedules and statements is only the initial phase of any bankruptcy case. But it is an extremely important one. The law requires full disclosure as a condition of a debtor's discharge. The fact that the UST or others may act on that information based upon the rights, remedies and responsibilities provided under the Bankruptcy Code or case law is also an important and expected consideration for a debtor seeking a discharge. That process, even under the best of circumstances, may take more time and effort by the Debtor.

So, the UST's request for an extension should be granted. Having said that, that decision is somewhat mooted in that the UST requested a 60–day extension to file a Motion under 707(b) and has in fact filed that motion within that 60–day period.

The Court doesn't know if UST will be successful on its 707(b) motion or not. That is a question for another day. The Debtor may have additional information to provide to the UST to satisfy some unanswered follow-up questions. Once that happens, the Court is always hopeful that the parties may reach a better, more realistic, practical solution than if the Court were called upon to do so. Accordingly, it is

ORDERED that the United States Trustee's Motion to Extend Deadlines is hereby GRANTED as it related to the Motion to Dismiss Under 11 U.S.C. § 707(b).